# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FAYE FEINSTEIN, RECEIVER FOR
WML GRYPHON FUND LLC,

        Plaintiff,

    v.                              Case No. 11-C-57

DENNIS LONG, et al.,

        Defendants.

FAYE FEINSTEIN, RECEIVER FOR
WML GRYPHON FUND LLC,

        Plaintiff,

    v.                              Case No. 11-C-58

BRIAN W. BENDER, et al.,

        Defendants.

## DECISION AND ORDER DENYING
## MOTION TO ALTER OR AMEND JUDGMENT

The Plaintiff Receiver in the above matters has moved to alter or amend the judgments and related decisions and orders dismissing her complaints with prejudice pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. She contends that the decisions and orders on which the judgments of dismissal rest were entered in reliance on manifest errors of law or fact. The motion will be denied.

In each of these actions Faye Feinstein, acting in her capacity as Receiver for WML Gryphon Fund LLC, sought to "claw back" money that was paid to two family trusts ("the defendant Trusts" or "the Trusts") that made redemption requests in January 2008. The requests were honored by the Fund, and the defendant Trusts received partial redemptions over a period of months ending in April 2009, the month before the SEC commenced a direct action against Wealth Management LLC ("WM") and its principals, and requested the appointment of the Receiver. The Receiver claimed the payments were improper and sought return of the money received by the defendant Trusts so that it could be equitably distributed to each of the investors on a pro rata basis. In her complaints against the Trusts she asserted claims for intentional and constructive fraudulent transfer in violation of the Wisconsin Uniform Fraudulent Transfer Act, unjust enrichment, unauthorized and wrongful distributions in violation of Wisconsin statutes governing limited liability companies, and aiding and abetting breach of fiduciary duty.

The Court dismissed those complaints upon concluding that the Receiver lacked standing to assert claims that, if viable at all, belonged to the investors. The Receiver now moves for reconsideration of the Court's decision on essentially two grounds. First, the Receiver seeks to bring her actions against the two defendant Trusts in her capacity as the Receiver of WML Quetzal Partners, L.P., one of the six investment funds over which her appointment extends. Quetzal, the Receiver asserts, invested $1 million in Gryphon and remains an investor. Given the Court's conclusion that the claims she asserted in the complaints belong to the investors, the Receiver argues that she has such standing in her capacity as Receiver of Quetzal to assert the claims previously dismissed. Seizing upon language in the Court's decision indicating the result would be different if the Receiver had alleged that back-dating the redemption requests defrauded the

company in some way, such as by avoiding losses that had already occurred, the Receiver also argues that, reasonably read or as easily amended, the complaints are sufficient to allege just such a scenario. Thus, for this reason as well the Receiver argues that dismissal was premature, and that the judgments of dismissal should be vacated so that she can seek leave to amend and proceed with her claims.

It is apparent from the defendant Trusts' responses to the Receiver's motion, however, that substituting Quetzel for Gryphon as the entity on whose behalf the Receiver would bring her action against the Trusts would not cure the problem of standing. For although Quetzel had invested $1 million in Gryphon, $829,021.53 or roughly 83% of Quetzal's investment was returned after May 31, 2008. (Decl. of Ryan S. Stippich, Exs. B, C.) Thus, Quetzal stands in the same position as the Trusts and suffered no injury as a result of the redemption payments made to the Trusts. In fact, if the principle the Receiver seeks to enforce in this case were applied to it, Quetzal would actually suffer injury in that it would also be forced to return funds to Gryphon that it continued to receive after payments to other investors who had made redemption requests were limited and later suspended altogether. Absent injury in fact to it, Quetzal lacks standing to assert any claim against the Trusts. *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010).

The Receiver also fails to explain why Quetzal could not have been named as a plaintiff earlier when the Trusts first challenged her standing on behalf of Gryphon. A Rule 59(e) motion is not properly utilized "to advance arguments or theories that could and should have been made before the district court rendered a judgment . . . ." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Quetzal's investment in Gryphon is not new evidence. The Receiver was appointed in May 2009 and presumably had access to WM's records concerning

3

Gryphon and Quetzal within a short time thereafter. She offers no explanation for why leave to amend was not sought earlier.

Finally, the Receiver argues that the Court's decision dismissing her complaint with prejudice bars any of the other investors from bringing an action against the defendant Trusts. (Reply at 4.) Given the Court's acknowledgment that the investors in the fund might have some sort of claims against the Trusts, the Receiver urges the Court to modify its judgment by at least indicating that it does not restrict the investors from bringing an action on their own. But nothing in the Court's decision indicates that it would bar any action on behalf of the investors. They are not parties to the action and, as the Court held, are not represented by the Receiver. A decision dismissing the Receiver's claim brought specifically on behalf of Gryphon can not bar a different action by non-parties. Claim preclusion principles would seem inapplicable under the circumstances. *See Lindas v. Cady*, 183 Wis.2d 547, 558, 515 N.W.2d 458, 463 (1994) (noting that "Under claim preclusion, or res judicata, 'a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings.'") (quoting *DePratt v. West Bend Mutual Insurance Co.*, 113 Wis.2d 306, 310, 334 N.W.2d 883 (1983)).

Even aside from the problem of standing, taking into consideration the pleadings and facts of record in the underlying Receivership action, SEC v. Putman, 09-C-506, the complaint fails to state a claim against either defendant. The facts as pled are that the two defendant Trusts made redemption requests in January 2008, prior to the WM's decision to limit withdrawals to two percent per quarter on February 15, 2008, and long before it barred all future redemptions in December of 2008. Even after it limited and then barred future redemptions by the remaining

4

investors, WM followed through on its earlier promise that it would honor the Trusts redemption requests which it had accepted in January 2008. As a result, the remaining investors received a substantially smaller portion of their investment. As was made clear in the Court's decision granting the defendant trusts' motions to dismiss, however, the operating agreement for Gryphon authorized just such a result. The Receiver's attempt to portray the Trusts as somehow defrauding the other investors simply fails.

The Receiver's claims for fraudulent transfer under section 242.04 of the Wisconsin Statutes fail because Gryphon received equivalent value for the transfers alleged, namely, satisfaction of its indebtedness to the trusts that were carried on its balance sheet once the Trusts's redemption requests were accepted. "It is apparent from the wording of the statute, as well as from its purpose, that if a transfer is made for commensurate consideration—if it is 'fair' in the sense of being one side of an equal exchange—it is not voidable. For creditors are not disturbed, delayed, hindered, or defrauded if all that happens is the exchange of an existing asset of the debtor for a different asset of equal value." *Scholes v. Lehman*, 56 F.3d 750, 753 (7th Cir. 1995). Here, the funds paid to the Trusts retired what pursuant to the provisions of the operating agreement governing the management of Gryphon had been transformed into Gryphon's debt to the Trusts.

The Receiver's claims for wrongful and unauthorized distributions in violation of sections 183.0608 and 183.0905 of the Wisconsin Statutes fail as well. The claim for unauthorized distribution fails because section 183.0905 does not apply unless there is a formal dissolution of the LLC pursuant to 183.0901 and then a wind-up pursuant to section 183.0903. At the time the trusts redemption requests were accepted by WM, there was no formal dissolution of the LLC and once their redemption requests were accepted, the trusts would have been considered creditors of

5

Gryphon who were entitled to priority in any event. Wis. Stat. § 183.0905 ("Upon the winding up of a limited liability company, the assets shall be distributed in the following order: (1) To creditors, including, to the extent permitted by law, members who are creditors, in satisfaction of liabilities of the limited liability company.").

The Receiver's claim for wrongful distribution under section 183.0608 likewise fails because that section only applies to distributions to members of the LLC, and the Trusts were no longer members of Gryphon at the time the distributions were made. The Operating Agreement provides:

> Notwithstanding that payment on account of withdrawals may be made after the Effective Time of such withdrawal, any Member as to whom a complete withdrawal is effected pursuant to any provision of this Article V will not be considered a Member for any purpose after the Effective Time of such withdrawal.

Operating Agreement § 5.3.3. The effective date of the defendant Trusts' withdrawal was December 31, 2007, long before the challenged distributions were made. Thus, defendants were no longer members of the LLC and section 183.0608 does not apply to them.

In arguing to the contrary, the Receiver places substantial reliance on the Court's approval of the distribution plan which, for purposes of distributing the assets of WM and the various funds, declined to treat any investors as creditors of the funds, even those who had made requests to redeem their interests before the Receiver was appointed. The plan approved by the Court also set May 31, 2008, as a redemption "cutoff date" after which any redemption distributions received by the investors would be offset against any distribution by the Receiver to which they would otherwise be entitled. The Court overruled several investors who objected to this aspect of the proposed plan of distribution on the ground that they had made redemption requests that were accepted by WM

before the Receiver was appointed. Under the terms of the various operating agreements for the Receivership funds, once their redemption requests were accepted by WM, the investors became creditors of the Funds. As a result, these redeeming investors claimed they were entitled to priority over the non-redeeming investors. In its Order Confirming The Receiver's Distribution Plan, the Court concluded that to award investors who had made redemption requests priority over those that had not in the distribution of the remaining assets of the funds would be unfair to the remaining investors and would elevate form over substance. SEC v. Wealth Management, Case No. 09-C-506, Dkt. # 161 at 3-9. The Court of Appeals affirmed, concluding that the Court acted within its broad discretion supervising the receivership and its distribution of the remaining assets. *SEC v. Wealth Management*, 628 F.3d 323, 332-33 (7th Cir. 2010). The receiver argues that the principle adopted by the Court in approving the plan of distribution mandates that the defendant trusts return the payments they received in response to their redemption requests.

The question of how a receiver should distribute assets in the possession of the debtor among investors is not the same, however, as the question of whether a receiver may lawfully compel investors to pay back money they lawfully received from the debtor before the receiver was appointed. The Court supervising a receiver is entrusted with broad discretion in deciding how limited assets in the possession of the receiver after a failed investment scheme are to be distributed among the class of investors. *See SEC v. Wealth Management*, 628 F.3d at 332-33 ("In supervising an equitable receivership, the primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable. . . . The district court has broad equitable power in this area . . . ."). In seeking to recover assets from third parties, in contrast, a receiver stands in the shoes of the debtor and may bring only those claims that the debtor himself could have brought. The fact

that the Court elected for equitable and administrative reasons to treat all investors the same with respect to distribution of the assets that were in the custody of the debtor at the time the receiver was appointed does not mean that the receiver may disregard the contractual provisions of the operating agreements in order to recover money that had already been paid to third parties pursuant to those provisions before the receiver was appointed.

Finally, the receiver's claims of unjust enrichment and aiding and abetting breach of fiduciary duty also fail. The unjust enrichment claim fails because neither of the defendant trusts were unjustly enriched by the debtor. They received only a portion of what the debtor's own records stated they were entitled to receive on the date they made their redemption requests. While the value of their investment may have declined after their redemption requests were accepted by WM, by that time WM had already contractually agreed to pay them what WM's records showed they were entitled to receive. And the claim for aiding and abetting breach of fiduciary duty fails because, as the receiver concedes, "none of the counts of the Complaint allege intentional misconduct by the Defendants." Resp. Br. (Dkt. # 11) at 6. Under Wisconsin law, "[a] person is liable in tort for aiding and abetting if the person (1) undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) consciously desires or intends that his conduct will yield such assistance." *Tensfeldt v. Haberman*, 2009 WI 77, ¶ 26 n.12, 319 Wis.2d 329, 768 N.W.2d 641. Absent wrongful conduct by the defendant trusts, the receiver's aiding and abetting claim must fail.

In sum, for the reasons stated in the Court's decision granting the defendants' motions to dismiss, the receiver lacks standing to assert the claims set forth in her complaint. Adding Quetzal as a plaintiff, even if allowed, does not alter the Court's conclusion. Moreover, the pleadings and

facts of record in this consolidated case and the underlying receivership case demonstrate that the various claims fail as a matter of law.  Accordingly, the receiver's motion to alter or amend the decision and judgment in this matter is denied.

      **SO ORDERED** this   16th   day of November, 2011.

                                s/ William C. Griesbach
                                William C. Griesbach
                                United States District Judge